Case number 21-3858, Richard Whitman v. David Gray. All arguments to be 15 minutes per side. Mr. Cody Reeves for the appellant. Good morning. Good morning, Your Honor. May it please the Court, Cody Reeves, on behalf of Richard Whitman, I'd like to reserve four minutes of my time for rebuttal. Very well. Mr. Whitman is entitled to habeas relief. The parties agree that the trial court erred by failing to instruct the jury on the Castle Doctrine, that is, that Mr. Whitman had no duty to retreat before using force in self-defense. Under this Court's decision in Barker, that error violates due process because it added an element to Whitman's burden to prove self-defense, plainly misinstructing the jury on a matter critical to the sole defense he raised at trial. But isn't that a matter of state law as opposed to federal constitutional law? I don't think so, Your Honor. I think under Barker the Court's clear that you have a right to present a complete defense. Sure, but you have a due process right to have a defense, but the nuances of the defense vary by state by state, and by saying, well, there is a state instructional error here, that doesn't automatically say it's a federal due process error, is it? I mean, that's kind of what you're arguing, that if there's any sort of an error under state law, it denies me my opportunity for defense, and therefore I have a federal constitutional due process right. And I don't think that's what the law is, is it? No, I don't think so either, Your Honor. I don't think that's what we are arguing. I think Barker is more limited than that. I don't think it's just the addition of an element. It's the addition of an element that plainly misinstructs the jury on a matter critical. But states vary on the duty to retreat. Some states you don't have any duty at all, others you do. It varies and varies. And to say, okay, there's an error in this area of Ohio law, and therefore I have a violation of my federal constitutional rights, I just don't know about, you know, I'm not sure. I think when a state decides to give the Castle Doctrine, and here all the parties agree the Castle Doctrine should have applied, and when the court fails to properly instruct the jury as to the law, and it adds an element to the defendant's burden to prove his affirmative defense. Okay, so you seem to be arguing what I'm questioning, whether an instructional error is a federal constitutional right violation. You say that it is? Yes, and not all of them, Your Honor. I think the Supreme Court's been clear in Kup, in cases like Estelle, that not every jury instruction error has to fundamentally undermine. Okay, which ones do violate the federal constitution and which ones don't? I don't know that I can go through all of them, but I think this one here under Barker the court's been clear. I don't think the court's ever called into question Barker. The court has reaffirmed Barker in Malinder in 2004. It reaffirmed Barker in Moody in 2020, an opinion by Judge Tappar. And so I think that Barker's on firm ground. I think it's joined by several of its sister circuits, as we pointed out, the Second Circuit. So I don't think this is unique to the Sixth Circuit. The Circuit does not stand alone on this issue, and I think Barker is clear on this point. I would say that, again, the error removed the third element entirely. It should have removed. Had the court properly instructed the jury, the third element would not have been there. See, some states you wouldn't have the third element. So the states that don't have the third element, the federal constitutional rights violated because the state doesn't recognize the third element. I mean, that's the logic of it, isn't it? Well, I think that would go to our argument under Kaler. I think that argument, there's a bit of daylight between the two. I think the Kaler argument is that states must give a castle doctrine instruction. They must have one of those. Every state must? That's the Kaler argument. I don't think that's the argument. I don't think every state's got a castle doctrine. That's all. 49 of the 50, as we noted. All right. There's one that doesn't, then. Vermont. The law is unclear in Vermont. But I think regardless, the kind of daylight between the two arguments is that in the Kaler argument, the states would have to have a castle doctrine instruction, and they would also have to give it when it's required. Here, I don't think we need to rely on Kaler or anything like that. I think we're firmly within Barker. And I think the similarities between Barker and this case are similar. What about Newton? Why isn't Newton the better guide here? I don't think Newton's a better guide because I think we are squarely within the four corners of Barker. I think just as in Barker, we have a self-defense instruction that's given, and I think that's why we're not. The state tries to push us towards Cahey, which is understandable. It's a recent case from this court by Chief Judge Sutton. And it deals with self-defense. But in Cahey, there was no self-defense instruction given at all. Here, as in Barker, we have a self-defense instruction given. And when the court- That's about Newton. But I appreciate Cahey, too. I was just asking about a different case. Yeah, I- A segue to a different other case. I apologize. I think Newton is not, doesn't control. I think Barker plan controls. I don't know that the state has offered a good argument as to why Barker doesn't control. They just point to Cahey. I don't believe they really point to Newton. And I don't think they have much response to Barker. And I think that's because Barker is clear, hasn't been called into question by this court. And under Barker- It's a substantive problem that Judge Griffin's identifying. There are lots of errors of state law and jury instructions. And state courts can correct whether the state trial court gave the correct instruction. And when those cases rise to a federal due process violation, and you can't really give us a bright line or really a very identifiable test, it's just very concerning. Because there are myriad cases where state courts might screw up their own instructions. Yeah. But we don't typically police that. And there's not absent, I mean, just a fundamental miscarriage of justice. We're not going to get involved in a case like that, typically. That's really what habeas is all about, is it not? It is. But, Judge Brady, let me try to address your concerns. Because I do understand that Barker, I think Barker read kind of as a maximizing Barker's holding, I think would create problems. But I think Barker is much more circumscribed. And I also think you have the backdrop of Kupp and Estelle that has to fundamentally undermine the fairness of the proceedings. And then you also have to declare Brecht the substantial and injurious influence on the verdict. So I think there's lots of backstops. I think recognizing that there is a due process violation here doesn't mean that Mr. Whitman is entitled to relief. There's still some work to be done. And so I think there are adequate guardrails. Fairness of the proceedings, I mean, it's got to be a grave miscarriage of justice. I can't see how he could have retreated anyway. Whitman is in the bedroom. There's no doors anywhere else as far as I can tell that the decedent comes up, approaches the door, and he's shot. If there was a duty to retreat, where would he retreat to? So the state gave a number of options in its closing that I think are worth mentioning. They said that he could have shut the door. He could have walked out of the house. Walked out? I mean, he's blocking the entrance. He can't walk by him, I don't think. Right. And I think, Your Honors, getting at the problem is that under Barker, the jury was given the latitude to believe that Mr. Whitman didn't start the confrontation that led to the altercation, that's element one, that he also won on element two, and yet nonetheless had to fail in his self-defense because of that third instruction. I can't see a jury saying, yes, there's no self-defense because I find he should have retreated. Well, the reality is there's no place to retreat. So I'm not sure it made any difference at all. I think you're exactly right, Judge Griffin, but I think that's the problem. I think it's important here the context of the trial. The trial court does not decide that the self-defense instruction can be given right before the final witness, Mr. Whitman, is going to testify. And so the parties are trying the case with the view that self-defense is going to perhaps be given, and the duty to retreat issue is still on the table as well. And I think if the duty to retreat issue were completely off the table, as the State says, a few things. One, I think the magistrate below recognized that that was not the case. In paragraph 64, sorry, on page ID 2024 of Doc 41 below, the magistrate says, the jury may have considered whether Whitman should have retreated upon Edy's arrival at the bedroom door. I think that's exactly right. And the State, in closing, then again went through all the things that Mr. Whitman could have done, shut the door, et cetera. It then comes back on rebuttal and says the State wants you to believe that he was fine to sit in his room and just wait. So clearly, I think, the State would not have spent so much time and effort on the duty to retreat, especially in some of the last words that it said to the jury, had this not been an issue that was squarely teed up for the jury to decide. And I think that there are, I think the first element of the self-defense is pretty straightforward. I think there are hard questions on the second element. And so I think it would be natural for the jury, given the hard questions and the hard work on the second element. I'm not sure which element is this, but you can only claim self-defense if you're in imminent danger of death or great bodily harm. The decedent didn't have a weapon. I mean, he approached the bedroom unarmed. And for your client to claim self-defense, he has to convince the jury, I guess, that he's in imminent danger of death or great bodily harm from an unarmed person who's approaching his door. And that's not usually what we see in self-defense cases. Perhaps, Your Honor, but I think here, given the context, I think, if we think about the overall context and the evidence, the jury heard. The jury heard that Mr. Eady used to live at the residence a month before this altercation. And there was an altercation, was it an hour before? No, it was just before. Just before? I mean, how long? 20 minutes before? There was a time frame. That's right. So at noon, they have the verbal altercation. Mr. Eady leaves. I believe he goes back to work. Mr. Whitman goes upstairs, and the record reflects that Mr. Whitman never again left his bedroom. Mr. Eady then comes back around 3.30 or 4 o'clock, so four hours. Four hours? Four hours up the stairs. At that point, he chokes Mr. Whitman. There's testimony about the beating. He defecates himself as a result of the fight. Mr. Eady goes back downstairs, and then in the words of the Court of Appeals, he tries to lure Mr. Whitman downstairs. And then how long transpires from the physical confrontation to him going back to the bedroom? Best we can tell from the testimony, it's about 30 seconds. He comes downstairs. 30 seconds is all? Yeah. He drops the .22 rifle behind the couch. He opens the door, tries to lure Mr. Whitman downstairs by letting his dogs outside. And then Jane Ann says, I'm going to call the police. He then takes off right back upstairs. Different question before you finish. So you didn't argue this in the Ohio Court of Appeals. Normally, that would be a procedural default. And I assume you don't want us to give extra deference to the state court's determination, but you never gave the state court effectively a last resort of the chance to rule on the issue. So why shouldn't we just find this as defaulted? That's right. Judge Rogler, I think that here it's clear that the state is way procedural default. We do not dispute, and they agree, that Mr. Whitman's appointment counts. Hey, what if I care about it? If you care about it. If you care what the parties want, what if I care about it? I think because it's a waiver, it doesn't matter. In Mazzalonka, this court. Well, I mean. It's not a waiver. It's a forfeiture. I don't think so. I think that the court's pretty clear in Mazzalonka, and the court relies on Wood v. Milliard, the 2020 Supreme Court case, where the court said that a waiver is an awareness of a defense. And this was a statute of limitations defense in Wood. But there's an awareness of the defense, and there's an intelligent choice not to raise it. You want us to give. You know, ordinarily we would defer and be quite deferential to the state court's ruling, and you don't want that, of course. I don't think there's any. And your way out of that is that the state court appeals didn't rule on the issue, but it also wasn't presented with the issue. Right. I think there's two issues. One is the procedural default, which I think they've waived pretty clearly. Well, isn't there an option to apply? Do we have cases sometimes applying it, sometimes not applying it? I think after Mazzalonka, and I think the court made it clear in Wood or Johnson to consider a waived defense as an abusive discretion. So I don't think the court has any. Isn't this less about what the state's arguing about deference to the state court? But I think that AEDPA only applies, and this is what then Judge Ludig said in the Fourth Circuit case that we cited, that 2254D simply excludes claims that were not raised on the merits. We do not dispute that Mr. Whitman's appointed counsel did not raise the claim to the Ohio Court of Appeals. But because it wasn't raised, the state had the obligation under Trest they have to raise procedural default or they lose the right to assert it. And they did that here. And so then AEDPA just simply doesn't apply because there was no federal claim to be adjudicated. Did they raise it in the trial court or did they raise it in this court? They did not raise it in the Ohio Court of Appeals. And I think their conduct in front of the district court, the habeas petition at page 26 of their return of writ, they list a summary of procedural default. They go through each one of Mr. Whitman's ten claims. They say he procedurally defaulted to the nine others. Did they raise it to us? No. I mean, they buried it at the end of their brief, and they just said that... At the end. Yeah. But the court... Raise it to this court. I don't. I think they said the court may, if it chooses, consider procedural default. And then it, in the last paragraph of its brief, said the better practice would be to simply decide that this claim is not cognizable on habeas. And so I think that the state's position has been clear, and I'll return for rebuttal. All right. You'll have your four minutes rebuttal. Any further questions? All right. Let's hear from the warden. May it please the court. I'm Bill Lamb. I represent the warden. I'm going to argue that this case is not cognizable based on Gilmore v. Taylor cited in Keehy v. Marquis. But before I do that, I'd like to take my argument out of order and respond to the comment by counsel that Barker v. Eukins applies. I submit that Barker v. Eukins does not apply in this case. The relevant part of Barker v. Eukins is that there was, in that case, an instance where the court of appeals was infringing upon the province of the jury to decide a sort of tail-end factual issue that the court of appeals should not have decided. So Barker v. Eukins is an outlier in this case because the Ohio court of appeals, in considering this case, looked at paragraph 63 to 69 and clearly held that they were not going to intervene or interfere with the province of the jury in deciding Whitman's case. So that's why Barker v. Eukins does not apply in this case. It's an outlier. And, in fact, the issue is not cognizable. Gilmore v. Taylor, a United States Supreme Court case, Penn site 343-344, which is mentioned in Key v. Marquis, is controlling in this case. That case stands for the proposition that federal habeas relief does not rely for issues of state law. And, furthermore, the United States Supreme Court has not established clearly established precedent emanating from the United States Supreme Court pertaining to an affirmative defense. So for those two reasons, the issue is not cognizable. I submit that the- About the Barker case. We heard a lot about that. So does that set a rule that we have to follow? And is this case on all fours with that case? I'd like to say it's on all fours. I don't remember, Your Honor. I don't know how to answer that question. Parker v.- Did I have the right name wrong? The Sixth Circuit case? I was asking about the Newton case, but did I have the name wrong? The case your friend on the other side mentioned 55 times. Can you give it a bit more? You're asking about Barker? Barker, yeah. The B. I'm sorry. Barker v. Eukins. Did I say Barker v. Eukins? I don't know what you said, but your friend on the other side mentioned it 100 times. I was mentioning Barker to be complete. Barker v. Eukins. Yes. My initial comment was directed to Barker v. Eukins. Yes, but- That's the case where the Court of Appeals, I believe it was the Michigan Court of Appeals, by inadvertence perhaps, took away a defense from the defendant by running over a potential factual issue in the case that they should not have done. And that intervened, that invaded the province of the jury. And that's what turns Barker- As long as you're not taking away the defense, you're saying under Barker, you're okay. Exactly. Here, they weren't taking away a defense, they were just what? Addressing what, an element of the defense? Well, there are two aspects to that. I'm going to rest on the Ohio Court of Appeals Adjudication 63 to 69, the paragraphs. There were two aspects of it. In the first place, the status of the parties at trial was not a debated issue. Whether one was a cohabitant or they were cohabitants or not, that was point one. And point two is kind of the inner logic of this case. That if you're going to justify a killing where you have one person who's armed and the other person who's not armed, and in this case, I won't go into the other details, paragraph 64 is the Ohio Court of Appeals discussion of those facts. If you're going to do that, it's quite normal to have certain standards to set up before we're going to allow some kind of legal justification for a killing of an unarmed person by an armed person. And all three of those elements have to be met. And the first two elements were correctly instructed. We assume the jury followed their instructions. We make that presumption. And, therefore, Whitman was not deprived of a fundamentally fair trial. Now, Barker v. Eukins, as I admit, might be a way to get to a different issue, not this case, if perhaps, not this case, a defendant had been deprived of a sort of a factual issue that the Court of Appeals inadvertently took away from the defense by making its decision on appeal. Not this case, though. Let me get... Barker v. Eukins does not apply. Let me ask you about the procedural default. I mean, what is the government's position on this? Well, I don't want to... Because it's unclear, it's unclear what your, I mean, you seem to be jumping right into the merits when there's this huge issue that this wasn't raised, this due process issue wasn't raised before the state courts. It wasn't raised in the intermediate court. It was raised in the Supreme Court. But could the Supreme Court have done anything about it, given that it hadn't been ruled on by the intermediate court? They could not, under their own rule of jester, the jester rule in the Ohio Supreme Court holds that typically they will not consider an issue that is not raised in the intermediate court. Okay, so I have two questions. First, is the government arguing procedural default? Yes, Your Honor. Okay, and did you raise that issue in the district court? No, Your Honor. Okay, and why can we consider it with your not having raised it in the district court? You may, if you wish. Why? What case law is there that says that we can do that? I believe it was in my brief that you may consider it, if you wish. In the federal court... I know, but what case law is there? Not just the government's word for it. Well, I'd have to look at my brief. I cited some case law there. Okay, I'd like to know what case you're relying upon for that. I'd have to look at my brief, Your Honor. But it's in your brief? It is my brief. Okay. I rely upon my brief on it. Is it inconsistent? I mean, I know, I've looked at the cases, and there are cases that say we have discretion... Yes. ...to consider procedural default even if it's not raised by the government, but then we also have cases that say that the issue was forfeited by the government if procedural default is not raised. Isn't that irreconcilable, those two lines of authority, that we can consider it even though it's forfeited, and the other ones that say it's forfeited? I mean, how do you mesh those two lines of authority? Is there anything to guide our discretion in deciding whether or not to consider the procedural default issue notwithstanding that it wasn't raised in the district court? To my knowledge, I do not know that there is any specific guidance on that. My question is, are those two lines of authority irreconcilable, or can you reconcile them? I have not thought of that question, Your Honor. I don't know how to answer that question. Okay. But you want us to, anyway, go on that we have discretion to do it, and they have not argued cause and prejudice to excuse the procedural default? It would be hard to argue actual prejudice in light of the... Whether it be hard, they haven't, have they? They have not. Okay. So if we actually decide on procedural default, they haven't countered it at all, and you went on that basis. Okay. Say, for the sake of argument, we say that you have forfeited the procedural default defense and we go to the merits, then your argument basically, it's not a federal constitutional violation here, it's only a violation of state law as to the state's duty to retrieve... Your Honor, my argument is it's not cognizable at all, given... Cognizable at all, you mean it's not a federal right, is that what you mean, it's not a federal constitutional right recognized by the U.S. Supreme Court? Correct. 2254D1, there's no clearly established federal law that pertains to this.  They haven't cited any law by the U.S. Supreme Court that you have a due process right to have a duty to, no duty to retrieve, instruction given. But may I add sort of a quick... Is that right? Yes, Your Honor. This Court is being asked to do something that habeas courts almost never do. At least we shouldn't do it. And that is to decide this issue at a high level of generality, apart from this case. It's been done before, but okay. And that's not something that habeas courts generally do. And the inner logic of this case, if I may return to that... By the way, may I add, I was the lawyer four years ago who looked at this case. And I was the one who argued as to this claim, the first of 10 claims. It seemed to me Estelle versus McGuire, you know, I'm done with it. And so I still think that... And you argue it was defaulted? I still think that that's probably the best view, as Judge Griffin is saying. This is really a state law case. But, yes, I would not want to waive an argument if it is convincing to the Court. Okay. You're the attorney who looked at it four years ago. Yes, I did. And you looked at all 10 claims and you said procedurally defaulted, procedurally defaulted. Why did you not say that the Castle instruction error was procedurally defaulted? I don't have a good answer to that. I guess they say that even Homer nods sometimes. Even smart people make mistakes. Makes mistakes. Okay. I did argue procedural default for the other nine. But when I saw this case on my desk, I thought, well, this is a state law issue. And I dismissed it on that basis. I see. Okay. You just never know where these cases are going to go four years later, Your Honor. I don't have an answer to that. Sure. But the primary issue that I want to emphasize in closing is that this issue is not even cognizable. Gilmore v. Taylor, 343, 344, which was cited in Cahey v. Marquis in this jurisdiction, is firm on that point. This case is not cognizable. The certified issue is the instruction, not just the Castle doctrine issue. And the court should rule that this is not a cognizable issue in this forum, in habeas corpus. Thank you, Your Honor. Very good. Thank you, Mr. Lamb, for your arguments. Mr. Reeves, you have four minutes rebuttal. Could I ask you about cause and prejudice? Absolutely. Yeah, I don't think that we haven't advanced an argument in our brief. I think it would be tough to advance a cause and prejudice argument. I mean, in your defense, part of the reason it's not in your brief is it was not highlighted. To the extent it's there, it was not highlighted heavily by your friend on the other side. That's exactly right. And I wanted to jump to Judge Bush's point, if I could. Cause and prejudice? No, sorry. He made a point to the State about On cause and prejudice, you really have no If we were going to enforce the rule, you have no basis to argue there was cause for the default. That's right. I don't believe that we can say that we do, Your Honor. But I don't think we need to because I think that the waiver is clear. I think Judge Bush, as you kind of noted to the State, if the State waived the argument, there's nothing that counsel could do here today to do anything about that. I do think under Mazlanka, if it's waived, there is no, this Court has no discretion to consider it. And again, I would point to Wood and say when you're aware of the defense, and as we went through, they raised it to nine claims. They went so far as to underline it on page 26 to 28 of the return of writ. This claim is procedurally defaulted. Those claims are procedurally defaulted. No mention It just feels to me it's less about sort of litigating posture and more about respecting a separate tribunal's determination, which Ed Putt-Habeas is all about, making sure we get proper deference to the State Court. So whether the State itself has raised the argument, we still have to look back at the State Court judgment, and we realize here the State Court never had a chance to rule on the issue. That's certainly true. We're being asked to not give that decision any deference. There's no decision to give deference to. And that, I think, is the point. I think that this case is a simple case had the State simply raised procedural default. There's no question. But when the State doesn't raise it But the underlying concerns for all these principles seem to be at play, even if, regardless of whether the State made a mistake or not. That's certainly true, but I think even if you consider some of the factors, if this Court were to think that the defense is just forfeited, I think comedy and the substantial injustice that would happen. I think when the State is not even urging this Court, they're not asking the Court, let alone urging the Court in their brief, to apply procedural default. I think that the Court should also, and if I could jump just to the merits, I think the State, in State v. Ward, points out how important this instructional error is. The Court said in State v. Ward that the two instructions have meanings totally opposite one another and therefore have a high likelihood of confusing or misleading the jury. I think there also needs to be respect for the State Court's understanding of its own law and the fact that this error is extremely prejudicial when it does happen. Again, there are three elements that Mr. Whitman has to meet. The third element should have not been there at all. The jury should not have been clouded with this sort of considerations about the need to retreat. And also to the second prong, I think Judge Griffin, you raised this, that he needed to have a bona fide belief that he was in imminent danger. See, I say it's so prejudicial when there really is no opportunity to retreat anyway. I could see maybe there would be a case where you could really argue that the jury hung its hat on the fact that he didn't retreat. But under these facts, it's hard for me to say they probably even went to that step. They probably said, no, there's no imminent danger of death or serious bodily injury from an unarmed man at this point. Getting back to procedural default, I see cases going both ways on it, that the government fails to raise procedural default, that it's waived or forfeited. But we also have the White v. Mitchell case, 2005 case. Are you familiar with that case at all? I don't believe I am. All right, page 524. I'm quoting from the opinion of the court. While procedural default is a defense that may be waived if not asserted, it is not a jurisdictional matter, and therefore we are not obligated to raise it sui sponte. We are nevertheless permitted to consider the procedural default issue, even when it is raised for the first time on appeal, if we so choose. So, I mean, that case appears to say that we have discretion to consider procedural defaults, even if not raised by the government. And there's other cases that foul this White v. Mitchell line that says we have discretion. And I guess you don't acknowledge it, but I'm telling you that there are cases like this. Right, understood. And I think you said it's a 2005 case. I think my answer would therefore be that Wood v. Milliard comes out in 2012. Justice Ginsburg says you cannot. It is an abuse of discretion to consider a waived defense. There it was statute of limitations, but any affirmative defense. And then the court applied that rule. I would abrogate or... Right, and then the court applied that rule in Maslanka in 2018. If I may, just in closing.  We might ultimately be incorrect. If Ohio were to try Mr. Whitman again, perhaps a properly instructed jury could convict him. But under O'Neill, that's not the question. Under O'Neill, this court has to be able to say with certainty that the error did not have a substantial and injurious influence on the jury's verdict, and we would respectfully submit that the court can't do that here, and so the conviction can't stand. Thank you. All right, thank you, Mr. Reeves. Also, I noticed that you were appointed pursuant to the Criminal Justice Act. Thank you for accepting this assignment and ably representing your client and presenting the arguments today. We appreciate your service to the court and to your client. Certainly. Thank you.